IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORGAN O'BRIEN, by his appointed guardian BARBARA O'BRIEN, | |
| Plaintiff, | |
| v. | |
| VILLAGE OF ORLAND PARK, | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, MORGAN O'BRIEN, by his appointed guardian, BARBARA O'BRIEN, and through his attorneys, brings this action against the Village of Orland Park, as follows:

## INTRODUCTION

1. This is an employment discrimination action brought to redress violations of Morgan O'Brien's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, by the Village of Orland Park.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b). Defendant is located in this judicial district and the events at issue occurred within this district.

4. All conditions precedent to suit have been met. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Following an investigation by the EEOC, the Department of Justice issued Plaintiff a "right to sue" letter on April 13, 2016. Ex. A.

**PARTIES**

5. Plaintiff, Morgan O'Brien, is a 31-year-old man who lives in the Village of Orland Park, Illinois. Because of his disability, Morgan has been appointed a guardian, his mother, Barbara O'Brien.

6. Defendant, the Village of Orland Park ("Village" or "Orland Park"), is a municipality under the laws of Illinois.

**FACTS**

7. Morgan O'Brien is a lifelong resident of Orland Park.

8. From 2005 to 2014, Morgan was employed by the Village.

9. Throughout his employment with the Village Morgan worked in the Parks Department.

10. Morgan has Williams Syndrome. Williams Syndrome is a rare genetic disorder characterized by delays in cognitive development, a distinctive facial appearance, and a unique personality that combines extreme friendliness and high levels of empathy with anxiety.

11. During the nine years of his employment with the Village, Morgan worked alongside his non-disabled peers performing maintenance duties in the Village's parks and facilities. His favorite job duty was painting the lines on the baseball fields, a task in which he took particular pride.

12. In 2011, a new manager took over the Parks Department. Gary Couch was known within the Village for his brash and aggressive approach to supervision, which regularly featured a raised voice and profanity.

2

13. Up until this point, Morgan's performance reviews stated that he either met or exceeded the required job standards.

14. The Village took no steps to train or educate Mr. Couch on working with someone with Morgan's disabilities, including how to accommodate Morgan so that he could continue to succeed at work.

15. Unlike Morgan's prior supervisors, Mr. Couch did not accommodate Morgan's disability either in his management approach or in his job task assignments. Mr. Couch's harsh management style and failure to accommodate Morgan's disability caused Morgan substantial anxiety and made it difficult for Morgan to interpret the meaning of his comments and actions.

16. Because of the difficulties with Morgan working under Mr. Couch's management, Barbara repeatedly reached out to Morgan's job coordinator at the Village.

17. Morgan's job was obtained through a Village "inclusion" program that worked to place people with disabilities in jobs with the Village and provide them with supports in that employment. It was through this program, which was run by the Special Recreation division, that Morgan had a job coordinator.

18. Barbara frequently asked the job coordinator to consider ways that the Village could accommodate Morgan's disability. Despite these requests, the Village failed to take any steps to provide reasonable accommodations or to even engage in the "interactive process" required by the Americans with Disabilities Act.

19. During the time that Morgan worked under Mr. Couch's supervision, Morgan's anxiety about work became increasingly severe. By May 2014, Morgan started becoming physically ill before going to work.

20. In May 2014, just weeks before Morgan's termination, Barbara again reached out to the job coordinator, telling her that work conditions were now causing Morgan significant stress, nervousness, and even making him sick.

21. The coordinator's only response was to give Morgan a week off of work without doing anything to address the problematic issues in the workplace. Ms. O'Brien's renewed request that Morgan be transferred to another department was flatly refused (as it had also been in the past).

22. At no time did the job coordinator, or any one at the Village, work with Morgan to find reasonable accommodations so that he could work successfully, as he had for so many years before.

23. On June 5, 2014, Mr. Couch assigned Morgan to power washing, a task that required him to work alone for his shift. Working alone for lengthy periods of time was particularly difficult for Morgan because of his Williams Syndrome.

24. When Morgan complained about the assignment, Mr. Couch told him that he could do it or go home. Morgan chose to go home.

25. Defendant Village terminated Morgan shortly thereafter. The Village did so without having provided Morgan with any accommodations or even engaging in the interactive process.

26. Morgan's family subsequently met with Village decision-makers to ask them to reconsider and to provide Morgan accommodations that would allow him to work successfully for the Village. The Village, however, proceeded with the termination.

## VIOLATION OF TITLE I OF THE ADA

27. Each of the above paragraphs, setting forth the factual allegations, is incorporated as if fully restated herein.

28. The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms and conditions of employment, including discharge, hiring and promotion. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(a).

29. Morgan O'Brien is a person with a disability under the ADA because his Williams Syndrome substantially limits one or more major life activities including, but not limited to, concentrating and communicating, and limit the major bodily function of the brain.

30. The ADA requires an employer to provide reasonable accommodations to a qualified individual with a disability to enable him to perform the essential functions of his job. 42 U.S.C. § 12112(b)(5); 29 C.F.R. § 1630.9.

31. At all times relevant to this Complaint, Plaintiff was a qualified individual because he had the skill, experience, and ability to perform the essential functions of his job with the provision of reasonable accommodations.

32. Defendant discriminated against Plaintiff in violation of the ADA when it: failed to engage in the interactive process to determine the availability of reasonable accommodations; failed to provide Plaintiff with reasonable accommodations to allow him to perform his job duties; and terminated his employment.

33. The above described unlawful employment practices were intentional, and Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

34. As a result of Defendant's unlawful actions, Plaintiff suffered injuries including but not limited to lost wages and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Order Defendant to reinstate Plaintiff to a position equal to his former position; or, in the alternative, award Plaintiff the value of compensation and benefits he will continue to lose in the future as a result of Defendant's unlawful conduct.

B. Award back pay with interest;

C. Award compensatory and punitive damages;

D. Award costs, expenses, expert witness fees, and reasonable attorneys' fees; and

E. Grant such additional relief as the Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

Dated: June 23, 2016

RESPECTFULLY SUBMITTED,

　/s/ Amanda Antholt
One of the Attorneys for Plaintiff

Amanda Antholt
Laura J. Miller
Barry C. Taylor
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, Illinois 60602
(312) 895-7330
(312) 341-0022
Amanda@equipforequality.org
Laura@equipforequality.org
BarryT@equipforequality.org

# EXHIBIT A



U.S. Department of Justice
Civil Rights Division

CERTIFIED MAIL
7010 0290 0000 2017 1077

950 Pennsylvania Avenue, N.W.
Karen Ferguson, EMP, PHB, Room 4239
Washington, DC 20530

April 13, 2016

Mr. Morgan O'Brien
c/o Amanda Antholt, Esquire
Equip for Equity
20 N. Michigan Avenue
Suite 300
Chicago, IL 60602

Re: EEOC Charge Against Village of Orland Park
    No. 440201405422

Dear Mr. O'Brien:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
    Village of Orland Park